UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| TERRY LEWIS, | ) |
|     Plaintiff, | ) |
| VS. | )    No. 19-1117-JDT-cgc |
| SHAWN PHILLIPS, ET AL., | ) |
|     Defendants. | ) |

ORDER TO MODIFY THE DOCKET, DISMISSING AMENDED COMPLAINT,
CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH
AND NOTIFYING PLAINTIFF OF APPELLATE FILING FEE

On June 6, 2019, Plaintiff Terry Lewis, who is incarcerated at the Northwest Correctional Complex (NWCX) in Tiptonville, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1.) On October 22, 2019, this Court dismissed the complaint, granted leave to amend, and denied Lewis's request for appointment of counsel. (ECF No. 5.) Lewis failed to timely amend the complaint, so the Court dismissed the case on November 22, 2019. (ECF No. 6.) However, later the same day, Lewis moved for an extension of time to amend. (ECF No. 7.) On November 26, 2019, the Court set aside the order of dismissal and the judgment, granted Lewis's motion for extension, and allowed him twenty-one days to file an amended complaint. (ECF No. 9.) He did so on December 20, 2019. (ECF No. 10.)

The amended complaint sues seven employees of NWCX, in their individual and official capacities. The Clerk is directed to MODIFY the docket to include the following additional Defendants: Natalie Voss, Health Services Administrator; Sarah Perkins, Grievance Chairperson; and Steve Jones, Associate Warden. (*See* ECF No. 10 at PageID 80.) Lewis claims that NWCX allows gangs, who attack or rob other inmates, to roam the facility. He says that such matters are "swept under the rug." (*Id*. at PageID 96.) Plaintiff further states that all NWCX prisoners wear color-coded arm bands, matching each inmate's particular housing unit. He alleges that on January 25, 2019, gang members, who did not reside in his unit, entered his housing section "with the intention to harm and/or kill [him]." (*Id*. at PageID 89, 91-92.) He states they stabbed him "numerous times . . . with homemade knives [made of] building debris and sharpened door handles" and "beat [him] with soap in socks." (*Id*. at PageID 91-92.) Lewis contends the assailants were able to impermissibly enter his living unit because Defendants failed to verify they wore the appropriately-colored arm band coded to his unit. (*Id*. at PageID 90-91.) Plaintiff also alleges the assailants stole several of his possessions, including his "television, stereo, gym shoes and commissary." (*Id*. at PageID 92.)

Lewis states he suffered "irreparable harm and chronic internal injuries," (*id.* at PageID 91), "a life time [sic] of discomfort and disfigurement," (*id.* at PageID 92, 93, 95-96, 97), and "emotional trauma" from these events, (*id*. at PageID 98). He remained in a hospital in Jackson, Tennessee, for one month after the assault. (*Id*. at PageID 96.) He claims that, while hospitalized, he "received myriads of treatment(s) and medical procedures" and "was prescribed a myriad of medications such as pain meds [and] wound

care aftercare." (*Id*.) He contends, however, that he "didn't receive adequate medical care nor did medical person[nel] adhere to the written orders" once he returned to NWCX. (*Id*.)

The amended complaint lists specific allegations against each of the Defendants related to the January 25, 2019, attack.

Plaintiff contends Defendant Cooper was the correctional officer in the area where the assault occurred and that she failed to follow "Policies, Procedures, Rules, Regulations, Customs and/or Safety measures . . . to inquire into the arm band that . . . is used to keep prisoners in their assigned areas." (*Id*. at PageID 90; *see also id.* at PageID 85, 106.)

Plaintiff alleges Defendant Lannom was "Cooper's shift leader [and] [NWCX's] Chief of Security." (*Id*. at PageID 93.) Lewis claims Lannom "is perpetually delegated with the authority to oversee his subordinates and ensure the promulgation of Policies [and] Procedures . . . in accordance with the State of Tennessee [and] Tennessee Department of Correction[]." (*Id*.) He contends Lannom did not make his "daily rounds" on January 25, 2019, "to physically observe the environment of the prisoners . . . and promulgate the assurance to his subordinates." (*Id*. at PageID 94.)

Plaintiff states that Defendants Phillips, Reeves, and Jones are NWCX wardens[1] and members of the prisoner grievance "executive staff." (*Id*. at PageID 96.) Lewis contends they denied him hearings on the grievances he communicated to them about the January 25, 2019 assault. (*Id*. at PageID 96, 99-100.) Plaintiff says that Phillips, Reeves, Jones,

---

[1] Phillips is the former Warden of the NWCX. He is currently serves as the Warden at the Bledsoe County Correctional Complex. *See* https://www.tn.gov/correction/sp/state-prison-list/bledsoe-count-correctional-complex.html.

and Lannom are responsible for all security, grievance, and medical care policies at NWCX. (*Id.* at PageID 98, 100, 101, 103, 106.)[2] He alleges that Defendants Phillips, Reeves, Jones, and Lannom "negligently failed to correct" the constitutional infractions of their employees "by delegating [their] authority and responsibilities to underlings while failing to oversee their acts [and] behavior, . . . allowing [their] staff to do as they wish without accountability." (*Id*. at PageID 98-99; *see also id.* at PageID 100, 101-02, 103, 104, 106.)[3] Lewis contends each of these Defendants, as well as Defendant Cooper, "willingly sanctioned magnitudes of civil abridge[ments] of Plaintiff['s rights] under the U.S. Constitution." (*See, e.g., id.* at PageID 99-100.) He asserts they allow inmates to possess contraband to assault NWCX officers and inmates without punishment. (*Id*. at PageID 99-104 and 106-07.) Lewis contends the Defendants "deliberately conceal these activities . . . to protect shareholder profits." (*See, e.g., id*. at PageID 99.)

Lewis avers that Defendant Perkins is NWCX's grievance chairperson, with responsibility to provide him "with the right to redress wrongs through 'Due process Hearing(s)' via the institution Grievance Policies, (501.01) . . . and assuring the human[e] treatment of Plaintiff." (*Id*. at PageID 104.) Lewis states that Perkins has "perpetually and systematically denied" him the right to be heard at grievance hearings under Policy 501.01. (*Id*. at PageID 105-06.) He contends Perkins "failed to monitor or correct the actions and

---

[2] Lewis also alleges that Defendant Cooper is responsible for safety and security policies but not for grievance or medical policies. (*Id.* at PageID 106.)

[3] Lewis alleges that Defendant Cooper "negligently failed to correct" the constitutional infractions of "her co workers and superiors . . . while failing to oversee their acts [and] behavior, . . . allowing her staff to do as they wish without accountability." (*Id.* at PageID 106.)

behavior of [her] staff" in their "refusal to . . . protect prisoners and [provide] basic medical care or humane treatment." (*Id*. at PageID 105.) Plaintiff alleges "negligence and deliberate denial of due process" by Perkins. (*Id*. at PageID 106.)

Plaintiff alleges that Defendant Voss is NWCX's Health Services Administrator and that she is "perpetually delegated with the authority to oversee her subordinates and ensure the promulgation of Policies [and] Procedures . . . in accordance with medical protocol with the State of Tennessee and Tennessee Department of Correction[]." (*Id*. at PageID 96-97.) Lewis also alleges Voss "is responsible for approving all expenditures" for his medical treatment." (*Id*. at PageID 108.) He suggests that Voss denied him medical care related to the January 25 assault. (*Id*. at PageID 98, 108.) Plaintiff further contends she failed to oversee her staff, "who under her directives attempted to transfer [Plaintiff] to just another site (site II) (Next Door) at N.W.C.X." (*Id*. at PageID 108.) Lewis suggests that Voss demonstrated "Deliberate Indifference as she and her co workers deliberately attempt(s) to conceal these activities." (*Id*. at PageID 109.)

Lewis seeks both a declaratory judgment and monetary damages. (*Id.* at PageID 109-13.)

The legal standards for assessing the claims in an inmate's complaint were set forth in the prior order of dismissal with leave to amend, (ECF No. 5 at PageID 28-30), and will not be reiterated here.

Like his original complaint, Lewis's amended complaint fails to state a claim.

First, it appears that Lewis seeks to hold Defendants Phillips, Reeves, Jones, and Lannom liable in their supervisory roles at NWCX. Under § 1983, "[g]overnment officials

5

may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.*" *Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

> There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

*Bellamy*, 729 F.2d at 421 (citation omitted). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. A supervisory official who is aware of the unconstitutional conduct of his subordinates but fails to act generally cannot be held liable in his individual capacity. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996). Therefore, to the extent Lewis's claims against the supervisory Defendants are based on the supposed failure to oversee and monitor the behavior of their subordinates to ensure compliance with all applicable policies, procedures, and regulations or on the negligent failure to correct the unconstitutional actions of those subordinates, those supervisory contentions fail to state a claim.[4]

---

[4] Lewis's amended complaint at times includes allegations suggesting that Defendant Cooper also is a supervisor, but he has identified her only as a correctional officer. Correctional officers do not generally have supervisory responsibilities, but to the extent Lewis contends that was the case, the same analysis applies to her actions.

Second, Lewis claims that Perkins failed to respond to his grievance letters and that she denied him grievance hearings. (ECF No. 10 at PageID 87-88 and 104-06.) However, prisoners do not possess a constitutional right to a prison grievance procedure. *See Young v. Gundy*, 30 F. App'x 568, 569-70 (6th Cir. 2002); *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (holding that plaintiff's allegation that jail staff ignored the grievances he filed did not state a § 1983 claim "because there is no inherent constitutional right to an effective prison grievance procedure."). Even if a grievance system was constitutionally guaranteed, Plaintiff has not shown how Perkins's conduct with respect to the grievance process directly affected his "ability to bring his claim before any court." *See Coleman v. Governor of Michigan*, No. 09-1139, 413 F. App'x 866, 874-875 (6th Cir. 2011) (citation omitted). Furthermore, a failure to take corrective action in response to an inmate grievance does not supply the necessary personal involvement for § 1983 liability. *See Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003); *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation."). Lewis's contentions as to Perkins fail to state a claim.

Third, the amended complaint repeatedly refers to nonspecific "Policies, Procedures, Rules, Regulations, Customs, and/or Safety measures" that Lewis claims each of the individual Defendants failed to follow or implement. (ECF No. 10 at PageID 89, 90, 91, 92, 93, 94, 97, 98, 99, 100, 101, 102, 103, 105, 106.) However, Lewis neither identifies any particular policy that supposedly worked a constitutional violation nor demonstrates that his purported injuries were incurred because of such rule or custom. *See*

7

*Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993). To proceed with official-capacity claims for injunctive relief, Lewis "must allege that the State was responsible for the violation of his constitutional rights because of a practiced custom or policy." (ECF No. 5 at PageID 31) (citation omitted). Despite repeated amorphous invocation of "Policies, Procedures, Rules, Regulations, Customs and/or Safety measures," Lewis does not sufficiently plead such a claim. The amended complaint does not allege that any particular NWCX policy was the "moving force" behind the alleged deprivation of Plaintiff's rights. *See Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 606-07 (6th Cir. 2007) (citation omitted). It also fails to allege that any specific policy was that of the Tennessee Department of Correction or the State of Tennessee. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Plaintiff suggests that the vague and unspecified policies "are mandated hereby The State of Tennessee [sic]," (ECF No. 10 at PageID 92), but he never particularly identifies what those policies are.[5] Lewis simply states that individual Defendants "failed to follow," (ECF No. 10 at PageID 90), "failed to adhere," (*id*. at PageID 91), and "refus[ed] to provide," (*id*. at PageID 101), rules and policies. These allegations are insufficient to state a claim for relief.

Fourth, Lewis alleges that Cooper failed to check the assailants' armband colors before they entered Plaintiff's housing unit, (ECF No. 10 at PageID 90-92), and that

---

[5] The amended complaint's sole reference to any singular policy – "501.01 [concerning Grievance Policies"] – fails to state a claim for the reasons already expressed *supra* with respect to grievance procedures. That is, there is no inherent constitutional right to an effective prison grievance procedure. *See Young*, 30 F. App'x at 569-70; *LaFlame*, 3 F. App'x at 348 (6th Cir. 2001); *Coleman*, 413 F. App'x at 874-875; *Simpson*, 79 F. App'x at 120.

8

Lannom did not make "his daily rounds" at NWCX on January 25, 2019. (*Id.* at PageID 94.) These contentions amount to claims of deliberate indifference, which arise under the Eighth Amendment's prohibition of cruel and unusual punishments. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (quotations omitted) (noting that prison officials "must take reasonable measures to guarantee the safety of the inmates" and "to protect prisoners from violence at the hands of other prisoners."). To state a claim under the Eighth Amendment, a plaintiff must satisfy an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). That is, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005). The subjective component of an Eighth Amendment violation requires a prisoner to demonstrate that the official acted with the requisite intent; that is, that he had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson v. Seiter*, 501 U.S. 294, 297, 302-03 (1991). Thus, "the prison official must know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837-38.

"[N]ot all injuries suffered by an inmate at the hands of another prisoner result in constitutional liability for prison officials under the Eighth Amendment." *Wilson v. Yaklich*, 148 F.3d 596, 600 (6th Cir. 1998). In the context of a failure-to-protect claim, a prison officer will not be held liable without a showing that he or she "should have been aware of the reasonable likelihood of a potential attack and intervened earlier." *Carico v.*

*Benton, Ireland, & Stovall*, 68 F. App'x 632, 639 (6th Cir. 2003). "[A] correctional officer who observes an unlawful beating may . . . be held liable under § 1983 without actively participating in the unlawful beating." *McHenry v. Chadwick*, 896 F.2d 184, 188 (6th Cir. 1990). However, the facts alleged must show that the officers "provid[ed] an opportunity for the attack and d[id] nothing" or remained "idly by while a known attack took place without intervening." *Carico*, 68 F. App'x at 639.

Although Lewis alleges that Cooper failed to check the assailants' arm band color and their NWCX-issued identification card, (ECF No. 10 at PageID 89-90), he does not contend Cooper was aware of the assailants' intentions against him or that Cooper remained "idly by" while the attack took place. Similarly, although Lewis contends that Lannom failed to make "his daily rounds" on January 25, 2019 "to physically observe the main compound," (ECF No. 10 at PageID 94), he does not allege that Lannom had prior knowledge the attack was going to occur. Accordingly, even assuming the January 25 assault against Lewis satisfies the objective component of an Eighth Amendment claim, Plaintiff's allegations do not show that either Cooper or Lannom was aware of and subjectively disregarded a substantial risk of serious harm to his safety or health. He therefore does not state an Eighth Amendment claim against Cooper or Lannom.

Fifth, Lewis's allegations against Voss about his medical treatment also amount to a claim under the Eighth Amendment. The objective component of an Eighth Amendment claim based on a lack of medical care requires that a prisoner have a serious medical need. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). "[A] medical need is objectively serious if it is

'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention.'" *Blackmore*, 390 F.3d at 897; *see also Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005). To establish the subjective component, a plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009); *Woods v. Lecureux*, 110 F.3d 1215,1222 (6th Cir. 1997).

Lewis claims that Voss rejected his requests seeking "an appointment with a specialist in the field of orthopedics and mental traumas" following his post-assault hospital stay. (ECF No. 10 at PageID 93, 96, 98, and 108 (Voss "perpetually delayed these [post-hospital] treatments [that Lewis requested], fallaciously to prevent [sic] the exacerbation of the physical pain and mental psychosis."). At most, Plaintiff's allegations amount to a disagreement about course of treatment, which does not present a proper claim under § 1983. *Estelle*, 429 U.S. at 107; *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."). Negligence or medical malpractice does not amount to a constitutional violation. *See Farmer*, 511 U.S. at 835-36; *Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

Lewis alleges that the extent and nature of the January 25 attack were severe. (*See* ECF No. 10 at PageID 91 (referring to assailants' use of "knives" and "soap in socks [used like] wooden club[s] and/or metallic bat(s).").) However, he does not describe what specific treatment Voss denied. He does not explain why the treatment he in fact received was unconstitutionally inadequate. He merely alleges that Voss denied him unspecified "pr[e]scribed meds" and "less frequent wound care." (*Id*. at PageID 97.) He contends that Voss "perpetually delayed these treatments," (*id*. at PageID 108), but he provides no measure of detail about them. He fails to inform Voss of the nature of the claims against her. In short, the amended complaint does not allege sufficient facts supporting a reasonable inference that a constitutional violation from inadequate medical care has occurred. Lewis fails to demonstrate either a serious medical need or Voss's deliberate indifference to such a need. Accordingly, his allegations against Voss do not state an Eighth Amendment claim.

In conclusion, the Court finds that Lewis's amended complaint also fails to state a claim on which relief can be granted. Leave to further amend is DENIED, and this case is hereby DISMISSED with prejudice in its entirety, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

Pursuant to Federal Rule of Appellate Procedure 24(a) and 28 U.S.C. § 1915(a)(3), the Court also must consider whether an appeal by Lewis in this case would be taken in good faith. The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in

good faith. Therefore, it is CERTIFIED that any appeal in this matter by Lewis would not be taken in good faith.

The Court also must address the assessment of the $505 appellate filing fee if Lewis nevertheless appeals the dismissal of this case. A certification that an appeal is not taken in good faith does not affect an indigent prisoner plaintiff's ability to use the installment procedures in the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(a)-(b). *See McGore v. Wrigglesworth*, 114 F.3d 601, 610-11 (6th Cir. 1997), *partially overruled on other grounds by LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). *McGore* sets out specific procedures for implementing the PLRA. Therefore, Lewis is instructed that if he files a notice of appeal and wishes to use the installment method for paying the appellate filing fee, he must comply with the PLRA and *McGore* by filing an updated *in forma pauperis* affidavit and a current, certified copy of his inmate trust account statement for the last six months.

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by Lewis, this is the first dismissal of one of his cases as frivolous or for failure to state a claim. This strike shall take effect when judgment is entered. *See Coleman v. Tollefson*, 135 S. Ct. 1759, 1763-64 (2015).

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

  s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE